The court of the state of Illinois has now convened. The appellant, Mr. Nick, presides. You may be seated. Our first case is the estate of price v. CK Brush Plumbing. And for the appellant, we have Mr. Lynch. For the appellee, Mr. Green. Mr. Lynch, you may proceed. Thank you so much, your honor. Identify yourself fully for the record. Absolutely. Good afternoon. My name is Jim Lynch. I represent the plaintiff appellant in this matter. That is the estate of Samuel Price. Kyle Price, his son, is the independent administrator of Mr. Price's estate. And may it please the court, Mr. Green and Justice Turner, Justice Connacht, and Justice Doherty, I appreciate the opportunity here today to address these issues on appeal before the Fourth District. The determination that needs to be made here today with regards to the death of Samuel Price on February 2nd of 2020, approximately two and a half years ago, is whether or not a duty of care is owed by the defendant in this case, CK Brush. And specifically, the focus of this appeal and the briefs back and forth are with regards to the open and obvious doctrine, the open and obvious defense to that duty of care. And specifically, the first prong of that duty of care, whether or not it was reasonably foreseeable that an injury would result to Mr. Price, given this condition on his property, the large open hole that was created by the defendant, CK Brush. Do you concede that it was open and obvious? Yes, your honor. Per our briefs, I think it would be disingenuous for us to do so. With regards to the Fourth District, July 14th, the Hudson v. Pate decision was released seven days after our reply brief was filed in this manner. And in review of the Hudson v. Pate Fourth District appellate decision, that is approximately six weeks old, there's an excellent discussion there that even if you're pleading negligence, which we did, this is not a premises liability action, that the open and obvious doctrine can be applied. So I will not waste the court's time and try to say that this was not open and obvious. Clearly, the photos show that. And what's determinative here for the court to decide is whether or not Judge Foley in McLean County was warranted in saying open and obvious applies in the two exceptions to that doctrine, specifically the first being distraction, that exception, starting with Ward and its progeny with the 1992 decision, followed by Lefever v. Hemlight, which further developed the second exception to the open and obvious doctrine, that being deliberate encounter. And that 1998 Illinois Supreme Court decision, whether either of those apply. And what we submit to you three justices is that both the distraction exception and the deliberate encounter exception apply, given the facts in this case. And moreover, there is a number of facts at issue here, disputed between the parties, that would warrant a denial of summary judgment, specifically a reversal of the grant of summary judgment by Judge Foley in January of this year. And I want to start... Can I ask you, on the distraction exception, what does the evidence show and what do you contend with respect to what he was distracted from and what he was distracted by? Absolutely. He was distracted by the sump pump system designed and implemented by the defendant C.K. Brush. So there's an excellent... What was he distracted from? The action of checking the pump and walking up to the edge of the hole. And that walking up to the edge of the hole, it has no bearing about whether he was in it or whether he had to go down to it. What we present to the court, and what we argue, is that the distraction was the action of checking the pump on a daily basis. And there is extensive circumstantial evidence in this case, given by Kyle Price, given by Corey Price, where they detail the 406, Illinois Rule of Evidence 406, habit of their father to continually check that pump over a nine-month period. Let's not ignore the fact that this was nine months from May of 2019 to February 2nd of 2020, when Sam Price ultimately fell in that hole, broke his neck, and died. And so he was distracted by the daily practice of going up to the edge of that hole and just merely peering in. But you're arguing that he was distracted from the hole by something in the hole. That's hard to follow. We're not distracted from the hole. Mr. Price was distracted by the requirement, really the active action of checking on that sump pump to make sure that it was removing waste. But you're saying he was distracted by those things, but how was he distracted from the danger of the hole? They're in the same place. Well, they're two separate objects, two separate items. And so there's a dangerous condition that contains the distraction, right? That is a factual summary that's unique and warrants this appellate work and an appellate analysis, is that the distraction is requiring Sam, defendant C.K. Brush, implementing the sump pump that would remove waste, where he would have to check on it and make sure that he would have to, that the sump pump was working every day. The action of going up to it and walking up to the edge of the hole is the distraction. I thought there was evidence that you didn't have to get up to the edge of the hole. And so that evidence submitted by defendants is a genuine issue of material fact, right? That dispute where they're submitting that you could just walk up to the edge of it or counsel would write on Judge Foley's written opinion at U.A. 6 where Judge Foley, and that was at page 19 of the response brief, where they're saying this, and I had a note about that, is that her opinion specifically states that you cannot, so she wrote, there's no evidence of what Sam was doing. He was protected by fencing. And then the next sentence she says, even if he checked the pump, he would not be near it. That's disputed, right? Well, I know that you're going up to it, right? Right, and so that testimonial evidence is the dispute. What's on the other side of that? They're saying that you didn't have to walk up to it, and they're saying you would just have to go to the adjacent property and check the hole, right, check the holes that it was draining on the other side. Who says you do have to walk up to it? Kyle Price. He says you don't have to get particularly close to the hole. You just listen to hear if the pump is working. So you have to walk up to the hole to hear it, right, that action of walking up. I can hear you. I'm not in danger of falling over there. I'm not the same sound of a pump that is slowly pushing sewage into a hole, right? I agree with that. That would be a very bad description. Okay, and so this action of going up, and let's acknowledge the size and depth of this hole, that it's 6 feet down, and that you would have to walk up to it. She wrote, Plaintiff testified that by merely walking up to the side of the hole, one could hear the pump was running. That action, that mere action of walking near it is what caused Sam Price's death. And that is a dispute where they're saying, Judge, Justice Doherty, what you're submitting to us right now is what a McLean County jury should decide factually, right, is that whether or not you had to get that close to the hole to perform the action. And what we submit through Kyle and Corey Price and their testimonial evidence that their fathers have it and him walking up to it daily, and granted, Kyle did say you would not have to get that close and you would have to listen for it, right? Clearly, on the night or during the day of February 2, 2020, when he was performing that action of going near the pump to simply check on it... Isn't this not... I mean, I understand where these arguments would fit under the deliberate encounter exception. You're saying he's deliberately going to the edge of the hole. How is that a distraction? So, if you're agreeing that deliberate encounter applies, we have an exception to the open and obvious doctrine. I'm saying that's where... It should be reversed. That's where the discussion fits. Sure. Distraction, and our argument on distraction is that defendant C.K. Brush should reasonably anticipate, reasonably expect that Sam Price would momentarily fail to appreciate the harm, right? Why? Because that's human nature? Absolutely. The action of checking the pump would have him momentarily fail to appreciate this pump that he's walked up to hundreds of times before. The more times you walk up to it, wouldn't you be more experienced? Pardon? The more times you walk up to it, wouldn't you be more experienced and less likely to be distracted? That is an argument for McLean County to decide, right? I think that's a fair argument for the defense. How generous are you? Let us allow us to get to a McLean County jury and argue that, right, Your Honor? So with regards to distraction, it is he momentarily failed to appreciate the harm. After nine months of doing this daily, he and his son walking up to this giant six-foot hole in the land. Right? It's not that part. The fact that he, your suggestion that he momentarily failed to appreciate the danger, that is entirely speculation. We don't know why, right? We don't know why he did that. We do know why because you have evidence of defendant Paul Brush, evidence of Nick Beale, his employee, evidence of respondent and discovery A1 Amy saying, you have to go up to the pump to make sure that it's working. We don't know that he was distracted when he fell in the hole. Yes, we do because he's found dead in the hole. So clearly, if he wasn't distracted, he wouldn't have stabbed his neck and died. Your Honor, we have the McLean County coroner's report showing as a secondary cause of death that it was fall into a sewage pit, neck fracture. That is evidence. Right? So we have, and granted, the appellate case law is clear that circumstantial evidence should be given the same way as direct evidence. Right? And we have five different individuals talking about the need to check this pump on a regular basis. Two for plaintiff, two for defense. He fell so somebody's at fault. Well, I'm happy to, if given the opportunity, to add that to my complaint as well. Right? We're here today on my denial for that failure to amend, or my request for leave to amend, that was denied prior to the expiration of the statute of limitations. We also want to argue there's voluntary undertaking of a duty. You know, looking at the 2008 First District decision in Lane, that there was clearly evidence, as counsel set forth in his response brief, that they put up an OSHA-approved, OSHA-level warning fence. Right? And then it went into disrepair over nine months. In the record at C-133, you have Kyle Price talking about the fact that this fence went into disrepair. And it was never an A1 Haney, RID, Eric Haney testifying to, they could have put plywood on it. They could have created a hash system with two-by-fours and put on a hash. They simply could have filled in the hole again. I mean, how minimal is this burden? Right. But at that point, we know that the problem that led to the retention of this company was sewage in the basement. Yes, sir. We know that uncovering the hole at the spot where the camera stopped is what essentially allowed that to drain at that point. Right. So you're saying even without the homeowner having decided what his next move was to keep sewage out of the basement, they should have filled the hole? It takes very little work to do so. And that's under the voluntary undertaking theory, which we have not yet allowed to be argued, not yet have been allowed to plead, right? Right. But you're asking under voluntary undertaking for something beyond the undertaking. And that we know is not allowed under the state of the law, right? There's going to be negligence in the undertaking. That's not what they undertook to do. Sure. The negligent undertaking by CK Brush was putting up that fence and not maintaining it and not taking additional steps for safety measures. They went halfway, right? Or they went a quarter of the way, and that is the voluntary undertaking. And that negligence is you didn't cover it with plywood, you didn't fill it in, you didn't create a hatch, and then you didn't maintain the fence. The act of putting up the fence started that process of misfeasance, right? And that misfeasance analysis is warranted. If the dangerous condition is the hole. Yes, sir. Did the erection of the fence make that hole a more dangerous condition? Well, no. It's a safety measure. It was a safety measure taken to protect Sam Price. And as of May 19th, that was an appropriate safety measure, and it did not become more dangerous. But Sam Price died on February 2nd of 2020. And nine months later, you have evidence of the photos. You have evidence of Kyle Price talking about a fence that had fallen down, was in disrepair, and was clearly an act of a contractor on this property. And there's evidence in the record of a continued back and forth between Sam Price and the defendants about asking them to continue to do this job. Whether that's circumstantial or direct, that's something a McLean County jury can hear. And that act and those actions would support the fact that this was then, you know, the fence led to a more dangerous condition as of February 20th. Not in May of 19th, but when you have a fence that is broken down and falling apart, and you have an individual who has gone there, let's say, a hundred times, right? That is a dangerous condition. How does it make the hole a more dangerous condition to have even a falling down fence? The reliance, right? Part C of Restatement 323A is that reliance by plan, in relying on the fact that that fence was supposed to protect him, and it didn't. Because clearly he was performing that action of getting near the hole, and on February 2nd of 2020, having done this hundreds of times before, he fell in that hole, broke his neck, and died. There's no dispute about that. And so when you have that reliance that leads to misdemeanors, that supports Lang, that supports Burkett, of which Justice Turner was a concurring justice in that decision in 2008, before the 4th District here. And my idea that Burkett relied heavily on the response brief is this court analyzing summary judgment, and we're not even there yet. We're simply asking leave to plead this, right? So the appropriate analysis on the leave to plead voluntary undertaking would be the four factors of Loyola, Illinois Supreme Court decision in 1992 that was wholly avoided by counsel in this response brief, and Hill, which is analogous, same year, in which this was a timely, you know, there was a curative effect of the pleading, it was timely, the reasonable opportunity prong was probably the most important prong for that reasonable opportunity to do so. I think it was 1992, Evans' 2nd District opinion supported that reasonable opportunity would be gauged on whether or not there had been previously dispositive motions filed. This was the first dispositive motion filed in this case. There was never a motion to dismiss. We were moving forward on our ordinary negligence count. But once this was granted by the court, and we're reading that case long, we discover we still have another opportunity here to, you know, avenge the death of Sam Price and take care of his family and what happened to him. Unjustifiably so, let's acknowledge the fact that this was a 68-year-old retired machinist who was handicapped and missing his right arm, regularly performing this action of just, if we submit, then it's just listening. It's different if a 68-year-old retiree with missing one arm is getting close to just listen, then you are right. What does the arm have to do with any of it? If he starts to fall, you would have two arms, Your Honor. I have two arms. It would be much easier to stop oneself from dying and falling. Again, are we not speculating that that's what happened? Well, that would be for a jury to decide. Right now it's whether or not there's a duty of care and whether the distraction or deliberate encounter exception applies. And based on our back and forth right now, it seems that the court is willing to acknowledge the deliberate encounter exception applies. I think that's unwise of you to assume. And I apologize for that, but I think the case law is clear, and I'm relying upon the case law, not any belief of my own. Counsel, when Sam was found, was the sump pump functioning properly? Yes, it was. Well, doesn't that defeat your argument about the exception of deliberate encounter? Well, the deliberate counter exception? Justice Turner, there's no evidence in the record that the pump was malfunctioning at any point over that nine-month period. What we do have evidence of is that the family was regularly checking the pump to make sure it didn't malfunction. Okay. I thought they replaced the pump about a month before Sam's death. Two weeks. January 15th to 20th. Is this two week, two minute? January 15th to 20th, they replaced that pump. It is a continuation of the system implemented by CK Brush, right? And the pump was working as they were regularly checking that pump. I think there's evidence in the record that Kyle probably said that the pump stopped working and the hole started to fill up. So two weeks later, you have a new pump purchased from Menards in Bloomington, working in that pump, and there's other evidence for the date of loss, as the coroner's report and the Bloomington PD in their report, Your Honor. And so if the pump, it was just a matter of hours, right, between death and Kyle finding the body. And so that pump was continuing to work because it was a new pump from Menards, but it was in a system designed and implemented by CK Brush. And so you have a pump where the family diligently followed the system created by CK Brush to put in that pump. Well, my point was, and I probably didn't make it very clear, is that if the pump was functioning properly, you would not make an inference that Sam had gone into the hole to either clean the pump, pull the pump out and fix it, or whatever. We don't have to get there. We're not getting there right now. What we're saying is the action of continually checking to see if the pump was merely working was the distraction, that he had to go out to the hole. I think that is... Well, he certainly needs to get in front of a jury, but we're here on duty. Right. That's a legal question, is it not? Was it reasonably foreseeable that this injury would occur to Sam Price? And we submit that it was because of the system that required him to continually check on the pump. Whether or not he got into that hole, I would submit to you that if he got into the hole, it wouldn't have broken his neck and died. So he was near the hole and fell. And that's what we have evidence of photographs, the coroner's report, the cause of death determination, that I don't even want to... The question now is, was there a duty of care? And we submit to the 4th District, to you appellate justices, that the deliberate encounter exception applies, and that being the benefit test, that there's far more of an advantage or a benefit to Mr. Price did not hit raw sewage and feces, rising up through his basement, rising up through the hole, out of any apparent risk, right? Thank you, counsel. Your time has expired. All right. Thank you so much. Mr. Green? Good afternoon. Jim Green, on behalf of the defendant, C.K. Brush-Plumbing. May it please the court, counsel. Judge Foley got it right. The summary judgment was properly entered. Obviously, my opponents acknowledged this hole poses an open and obvious danger. And so the question becomes whether either one of the exceptions apply. But it seems like the plaintiff's argument is that simply because C.K. Brush dug a hole and then Mr. Price, unfortunately, was found deceased in the hole, therefore, my client must be liable. But the record does not support that at all. And if we can talk first about the distraction exception, the Supreme Court of Burns made it clear there has to be evidence of a distraction. We can't speculate. There's no evidence. There were no witnesses to the incident. We don't know why Sam Price was there, what he was doing, or how he was doing it. So this is not like Ward v. Kmar where you have a shopper that was... the view of the post was obstructed. There's no evidence of Sam Price having an obstructed view of the hole or the fence. But we can also, in fact, we have to, as the trial court did, have to indulge all inferences from the known evidence that might favor the plaintiff. Does that get them home? There's nothing to infer without any evidence. There's no evidence, for example, of Mr. Price looking up when he should have been looking down at the hole like the construction worker and diver. So as far as distraction goes, there's absolutely zero evidence. The only thing that bothers me about that argument a little bit is it almost seems to imply there has to be a witness. Otherwise, the exception could never apply. Is that a problem? Well, I think we just have to look at the circumstances here. I suppose there could be some situations where inferences could be made without a witness. But here, we have an open hole. Mr. Price was well aware of the hole from the day that it was dug. Nine months went by between the day it was dug and when this incident happened. He had even expressed concern about safety because of the hole. And we don't know what he was doing. And so I think we have to move to the deliberate encounter exception, which also doesn't apply. And, of course, as the court knows, based on the Supreme Court's holding in Lefevre, typically this exception applies when the plaintiff is performing a work duty and without encountering a hazard, he would be neglecting his job duties. Typically, but not exclusively? That's not exclusive, but it's almost always the case. That's luck of the draw, though, right? It's not like they're shooting down the other cases. The luck of the draw is that this has been seen in cases that arise out of the employment context, but there's other cases that don't, and it's been applied to those. That's true, Your Honor. There was, of course, the Osco case with the cart napper where the customer had to exit the store, and the only way to do that was to go through a dangerous exit. There was the horse race case where the jockey had to choose an exit over here because it was much closer to where his next job was than if he'd gone over there, for example. But we don't have anything like that here. Again, we don't know why Sam Price came up to the hole. The evidence in the record shows that the work that my client did in May 2019 was sufficient to correct the problem, and there's no evidence of any problem between then and January 2020. It's not a permanent fix. It's obviously an interim fix. That's correct. You wouldn't have fixed it by digging a hole and leaving it there. So did your client have an obligation to conclude that? Well, waiting to hear back from Mr. Price. There's a lot of conjecture in the record, of course, as to whether the prices were on a sewer system or whether it was septic. How do you hook into the city? Mr. Price had even hired an attorney to look into this and to contact the city, and C.K. Brush never heard back, so this was temporary. But, again, the work we did, there's no evidence that what we did was insufficient as far as correcting the sewage issue. And then the pump in the hole was replaced by Kyle Price a few weeks before the incident that brings us here today. And Kyle Price admitted that no problem with the work that he did the day he did it, not until the time of the incident, and then even after the incident, he's not aware of any problem with the pump. And so we don't know why Mr. Price ended up in the hole or was anywhere close to the hole. The record shows that nobody had ever gone around the fence before the incident other than Kyle Price going in the hole to replace the utility pump. And so the record is also clear, according to the administrator, you wouldn't have to get close. You wouldn't even have to go around the fence to check on the pump. You just go out to the fence and you can hear whether the pump is running. And so the risk of encountering the hole far outweighed whatever advantage Mr. Price would have gained by approaching the hole to check on a non-operational pump or going around the fence, which hadn't happened before. So neither exception applies in this case. And then, of course, if we look at the traditional duty analysis, it was not reasonably foreseeable therefore that Sam would fail to avoid the risk posed by the hole, particularly with a pump that was operating correctly. And then we turn to the issue of whether the plaintiff should have been allowed to file an amended complaint, and the judge got that right too. First of all, when the summary judgment was considered, I know that the case, it sounds new because it was only 11 months old, but the reality of the situation is we had done written discovery, we'd done oral discovery in McLean County. What you do is when you're done with discovery, you get a hold of the judge and say, we're done with discovery, we're ready for trial. And that's what the plaintiff did here, as the judge alluded to in her oral order. And at that point I said, wait a second, I'm going to file a motion for summary judgment. So there was no trial setting so that I could file. Actually, I had already filed my motion, and then the court was going to consider that. And so there was no attempt made at all to file an amended complaint until after the court had ruled on the negligence issue, my motion for summary judgment. Wasn't it at the hearing on the summary judgment motion when that was brought up orally? Yes, right after the judge orally granted the motion and said, prepare a written order. That's when the whole subject of the amended complaint was broached. The amended complaint had not been prepared. A written motion hadn't previously been filed with the amended complaint attached. There was no explanation as to why the plaintiff had waited that long to file the amended complaint. And then if we look at whether this would have cured a defective pleading, certainly it wouldn't have. The allegations really aren't any different in the amended complaint. The legal theory is different. The legal theory is different. That's really the only thing that changed. But I don't know why this couldn't have been done earlier. And then it was not a curative type of change. In the Loyola case, of course, that was a contract case, not a tort case. But summary judgment was entered in favor of the defendants. But then the plaintiff said, hey, wait a second, I found a warranty. And then the court allowed an amended complaint. And there were much more specific allegations in Loyola. Here, the allegations are essentially the same, but it's just a different theory. So that's not a curative effect. And then also we have to look at the Burkett v. Illinois Power case in this court, which talks about how you prove misfeasance and under what circumstances there would be a duty in connection with a voluntary undertaking. And so the work that my client did did not increase the risk of harm to the plaintiff. He was well aware of the work. He asked for the work. So he was in an equal position. And because he knew about it, he didn't rely on what we did. And, again, these are just the factors. And the case law set forth in Burkett to prove a voluntary undertaking to show misfeasance. What about the plaintiff's argument that he was relying on the fence, which had become dilapidated? Well, I think even if there was no fence there, the result of this case wouldn't be any different. Well, I understand. But that's the undertaking, putting up the fence. Yes. And you said the plaintiff relied on the fence being placed there, and that makes the... Well, the fence was still there. It wasn't in perfect condition. There was nothing about the fence that would have prevented Mr. Price from knowing that the hole was there. He just chose, for whatever reason, to work his way around the fence. So there's no duty under those circumstances. And for these reasons, I would ask that the Circuit Court be affirmed. And I'd also like to thank you for the opportunity to appear in person. It's good to be here. Thank you.  Mr. Lynch? Thank you, Your Honor. Counsel's argument that there was no witness to this incident of a wrongful death and the death of Sam Price on February 2nd of 2020 is a dangerous precedent to set, that you cannot apply the distraction exception. I don't think that was his argument. I think he said something in response to Justice Turner's question. I have in my notes no witness to the incident as support for denying distraction applies and denying deliberate encounter. We will never hear from Sam Price as to what he was doing that night, right? We will never hear from the decedent as to specifically what actions he was taking that night. And so to deny that the distraction exception applies, to deny that the deliberate encounter exception applies to the open and obvious nature of this hole because the witness is dead is a dangerous precedent to set. And that is why I'm responding to that argument of this lack of evidence. That's a misnomer that's misleading. There is extensive evidence in the record. I'm sympathetic with your position that just because the one witness, the most important witness isn't here, that we shouldn't overlook other evidence. And I agree with the fact that we would have to look to the other evidence. But it can make your case stronger. It may make it harder for you to come up with evidence to show that he was actually distracted as opposed to those cases which have been found not a good distraction, which is I'm just looking the other way. Right. But what evidence do we know that says he was just looking the other way versus looking at where he was supposed to be? That's why we're here, right? It's a tough case. But counsel relies on Bruns versus the city of Centralia, and he relies on Portrassen versus the city of Chicago. And in both those instances, those are individuals walking along a sidewalk who testified in the record that they were looking somewhere else. And in Bruns, she stepped her toe on a sidewalk defect. In Portrassen, she fell into construction in the middle of the sidewalk. What we have here, which is analogous to Earn, to Schaefer, to Henderson, is the performance of a required task. The required task of going up to just near that hole, just near it to listen to that punk, is evidence of performing the required task that led to the distraction where Sam Price momentarily failed to appreciate the harm after hundreds of times of doing this over nine months, and he fell in and died. That is not just looking some other direction as he's trying to go into his driveway and get into his car or something like that. There's no evidence that the car was nearby. There's no evidence that there's some other distraction evident or that he was performing some other action, or that he was just looking some other way. We'll never know. But what we have evidence of from the defendants and plaintiffs is the fact that he was performing a required task. I believe that's it for me. I appreciate it so much. Can I tell what you're reading? Okay, thank you. So that's to address your argument, Your Honor. It's a tough case. We don't have those facts in terms of February 2nd of 2020. What we have is specific facts that rise above Bruns and Potrasson. And one thing about Bruns is that counsel in his brief made the argument that those exceptions of distraction and deliberate encounter are lower if you have no evidence of a performance of a required task. That analysis on the first two prongs of duty are lower when it's open and obvious. What we have here in what Bruns supports is that if you have the distraction exception, if you have deliberate encounter, it's heightened. That analysis as to the applicability of those two distractions heightens that reasonable foreseeability of injury. And the court should take that into consideration as well. One other point, if I can make it, is that counsel just stated, I don't know why this would have been done earlier with regards to our complaint. That is not a basis to deny our request for leave to amend. And it's almost paraphrasing what Judge Foley said to us. It's a factor. It's not. It's one of the Loyola factors. Prong four is to reasonable opportunity. And Evans in 92, that decision is dispositive here, or key here, that if you've faced a dispositive motion before and you delay, well then you shouldn't be allowed that opportunity. Here, we never found and never received any dispositive motion. Why would we suddenly add counts if we're moving along and pursuing this case through litigation? Let me further add that at no point was I going to forego F2 discovery and F3 discovery. That is completely misleading by Mr. Green, that we had just closed F1s and he filed his motion for summary judgment. I have all the time in the world. I didn't have a trial date. I was going to talk to the coroner. I was going to bring in an OSHA expert. I plan to do so if given the opportunity to go back to McLean County. So that is misleading. Thank you, counsel. Thank you so much. We appreciate your arguments. We'll take the matter under advice.